THE STATE OF OHIO, APPELLEE, *v.*
MILLER, APPELLANT.

(No. 1632—Decided February 24, 1988.)

*Christopher J. Collier,* assistant prosecuting attorney, for appellee.
*Robert Schultz,* for appellant.

BAIRD, J. This cause came on before the court upon defendant Keith Miller's appeal from his conviction of rape in violation of R.C. 2907.02(A)(1)(b). We affirm.

In October 1986, Erica Miller's teacher noticed behavioral changes in Erica. As a result, eventually the Medina County Children Services Board became involved. On October 30, 1986, Erica, a retarded seven-year-old child who functions at the level of a three- to three-and-one-half-year-old child, was examined by Dr. Susan Asch. Dr. Asch found physical evidence of vaginal and anal sexual abuse. During the examination, Erica told Dr. Asch that "Daddy hurt me there," pointing to her vaginal area, and "Daddy made a boo-boo there" and pointed to her stomach.

On November 6, 1986, the defendant was interviewed by Detective Matthew Dillon of the Medina Police Department. Miller was given the

*Miranda* warnings; during the course of the interview, Miller admitted to masturbating on Erica's buttocks. Miller returned to the police station the next day and ultimately made a written confession to masturbating on Erica four or five times and to anal penetration.

On December 5, 1986, Miller was indicted for rape with a specification. The defendant filed a motion to suppress his confession which was denied. The defendant was given a psychological evaluation to determine his competency to stand trial and was found to be competent. Miller was convicted of rape; he filed a motion for new trial which was denied after hearing. Miller appeals.

### Assignment of Error I

"Defendant was denied his Sixth Amendment right of fair trial due to incompetent representation by his appointed attorney."

Miller argues that his trial counsel was ineffective in several respects: (1) counsel inadequately prepared and argued defendant's motion to suppress; (2) counsel failed to call witnesses; and (3) counsel failed to present evidence of alternative means of Erica's injuries.

In evaluating a claim of ineffective assistance of counsel a two-step process is employed: first, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client; next, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397, 2 O.O. 3d 495, 498, 358 N.E. 2d 623, 627, vacated as to the death penalty (1978), 438 U.S. 910. The test is whether the accused, under all the circumstances, had a fair trial and substantial justice was done. *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 79, 74 O.O. 2d 156, 160-161, 341 N.E. 2d 304, 310. Applying these tests, we fail to find any substantial violation of defense counsel's essential duties.

Miller argues that counsel's failure to put the defendant on the stand or to call a psychologist to the stand during the suppression hearing prejudiced him. Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. *State* v. *Hunt* (1984), 20 Ohio App. 3d 310, 312, 20 OBR 411, 413, 486 N.E. 2d 108, 110; *O'Malley* v. *United States* (C.A. 6, 1961), 285 F. 2d 733. Miller contends that counsel's failure to call these witnesses at the suppression hearing prejudiced his challenge of the confession on voluntariness grounds. However, the record reflects that Miller's competency had been evaluated prior to trial and that the court was aware that the defendant was "somewhat limited intellectually" prior to the court's overruling the suppression motion. The defendant maintains that Miller's mother should have been called to the stand to testify as to Miller's susceptibility to pressure. However, the voluntariness of a confession is to be determined based on the totality of the circumstances. *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 7 O.O. 3d 213, 372 N.E. 2d 1324, paragraph two of the syllabus. Miller contends that trial counsel's failure to further argue the suppression motion or to file a post-hearing brief prejudiced him. The record reflects that counsel's memorandum in support of the motion to suppress sets out the law of voluntariness of confessions and relates the facts and circumstances of Miller's confession to the law. As such, we cannot conclude that counsel was ineffective in the handling of the suppression motion.

Miller argues that although trial counsel was informed of evidence of alternate means of Erica's injuries, he failed to examine Erica's mother about

those possibilities. Dr. Asch's expert testimony as to the type of injuries suffered by Erica and the possible causes of those injuries was not consistent with the alternative means suggested by the defendant. Moreover, Dr. Asch testified that some of the injuries were relatively fresh abrasions. The post-trial sworn statement of Carmen Miller, the child's mother, indicates that under her proposed explanation, Erica's injury would have taken place when they were living in Birch Hill and in Autumn Run. However, at the time of the rape the family lived on Miner Drive in Medina. Accordingly, Carmen Miller's failure to testify as to the injuries could not have prejudiced the defendant.

Accordingly, we cannot conclude that trial counsel failed in any substantial duty owed to the defendant or that the defendant was denied a fair trial. Miller's first assignment of error is not well-taken.

### Assignment of Error II

"Dr. Asch's testimony concerning what Erica Miller told her about the alleged cause of her injuries should not have been allowed into evidence; allowance of said testimony was prejudicial error."

Miller argues that the trial court erred in admitting the hearsay testimony by Dr. Asch relating to the cause of Erica's injuries. Miller contends that as seven-year-old Erica has an I.Q. of forty-one and functions as a three- to three-and-one-half-year-old child, Erica's declarations are not competent and her statement that "Daddy made a boo-boo" would not be admissible.

Dr. Susan Asch, a pediatrician and Ph.D. in comparative social psychology, is the associate director of the emergency and trauma services and co-chair of the child abuse team at Akron Children's Hospital. Contrary to defendant's assertions, Dr. Asch was not called upon to examine Erica merely for purposes of trial but, in fact, conducted the diagnostic examination of the child on October 30, 1986, before the defendant's confession. The doctor's testimony falls squarely within the Evid. R. 803(4) exception to the hearsay rule:

"The following are not excluded by the hearsay rule * * *:

"(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

The defendant contends that Erica's declarations as testified to by Dr. Asch were inadmissible as Erica was not deemed competent to testify. "The judicial determination of legal competency of a child * * * for trial purposes is a * * * different consideration than * * * admissibility of hearsay statements of the same child made to a physician during diagnosis and treatment. * * *" *Ferrell* v. *Ferrell* (Mar. 14, 1986), Huron App. No. H-84-39, unreported, at 6. "* * * [I]t is not a condition precedent to admissibility of statements made to a physician for diagnosis and treatment under Evid. R. 803(4) that a child be determined competent to testify pursuant to Evid. R. 601(A). * * *" *Ferrell* v. *Ferrell, supra,* at 7.

The cornerstone of admissibility under Evid. R. 803(4) is whether the statements are reasonably pertinent to diagnosis or treatment. *State* v. *Reger* (May 14, 1986), Summit App. Nos. 12378 and 12384, unreported, at 7. Dr. Asch testified:

"Q. The comments that she made during the examination, are those part

of the exam itself, or did you take a separate history? How does that work?

"A. In children under the ages of about — certainly under the age of five or six, and probably under the age of ten, but certainly in the pre-school child, either developmentally or chronologically, we really treat verbal behavior as part of the observations during the examination because you don't sit a child that age down and say, 'Tell me the story; tell me the history.' You look at them and listen to what they're saying.

"They may say any of a variety of things during that exam, and that's an important form of behavior. You see how old the child appears to be. You see whether their comments match their injuries.

"Often, little babies will do something. You poke in their ear and they cry. That's an observed verbal behavior, but it's also connected with — it's an instance of ear infections. So, this kind of behavior is the kind of thing we observe in children while we are examining them."

The statements made by Erica were clearly related to diagnosis and treatment. "'* * * [A] fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription.' * * *'" *United States* v. *Iron Shell* (C.A. 8, 1980), 633 F. 2d 77, 83-84, citing 4 Weinstein & Berger, Weinstein's Evidence (1979), Section 803(4), at 803-129.

The defendant also seems to argue that the testimony as to the cause or manner of injury is not admissible. While statements of fault generally fail to meet criteria for admission under Evid. R. 803(4) (see *United States* v. *Iron Shell, supra*), statements by a child abuse victim that the abuser is a member of the victim's household are reasonably pertinent to diagnosis and treatment. *United States* v. *Renville* (C.A. 8, 1985), 779 F. 2d 430, 436, 438; *Goldade* v. *State* (Wyo. 1983), 674 P. 2d 721. Familial child abuse involves more than physical injury. The identity of the offender might be necessary for psychological diagnosis and treatment and, moreover, treatment may involve, at least in part, removal of the child from the situation. See *State* v. *Myers* (July 24, 1985), Summit App. No. 12018, unreported, at 4; *State* v. *Reger, supra*, at 7-8. All of this notwithstanding, the testimony involving the identity of the defendant is cumulative in this case and consequently not prejudicial. Miller confessed to actions constituting rape under R.C. 2907.02; Miller's confession was properly admitted and identifies him as the perpetrator.

Miller's second assignment of error is not well-taken; the judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, J., concurs.

QUILLIN, P.J., concurs separately.

QUILLIN, P.J., concurring. I concur in judgment because I believe the evidence of guilt is overwhelming. I write separately to express my concern with the majority's expansive interpretation of Evid. R. 803(4).

One must always be mindful that the Evidence Rules are to be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended. Evid. R. 102.

Evid. R. 601, which restates, nearly verbatim, R.C. 2317.01, provides in part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and trans-

actions respecting which they are examined, or of relating them truly * * *[.]"

The hearsay exception for statements made for purpose of medical diagnosis or treatment (Evid. R. 803[4]) is founded on the premise that such statements are reliable because of the declarant's motive to tell the truth because his treatment will depend in part upon what he says. But if the declarant is "incapable of receiving just impressions of the facts * * * or of relating them truly" how can the declarant's historical statement be received as truthful when told to a doctor?

The majority is saying that a declarant is competent to tell a doctor what happened, even though he is not competent to tell the trier of fact. It is difficult for me to accept this contradiction, especially in a criminal case which has confrontation implications. I would be less troubled if the declarant were available to testify. At least in that situation the trier of fact would be able to compare the hearsay statement with the in-court statement.

It seems to me that the majority is applying what Professor Irving Younger once called "the guilty SOB theory of admissibility." In other words, if you need the evidence to get a conviction — let it in.