{¶ 23} I agree that this matter has to be remanded for a hearing. I disagree, however, regarding what needs to take place at that hearing.
 {¶ 24} Initially, I note that, pursuant to State v. Thompkins,78 Ohio St. 3d 380 (1997), an appellate court reviews findings of fact in criminal cases both to determine whether they are supported by sufficient evidence and whether, pursuant to the "criminal manifest weight standard," the trier of fact created a manifest miscarriage of justice. The standard quoted by the majority at ¶ 10 is, in accordance with State v. Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, the "civil *Page 16 
manifest weight standard" and, therefore, not the correct standard for application in suppression cases.
 {¶ 25} Beyond that, unless this Court overrules its decision inState v. Burnette, 125 Ohio App. 3d 278 (1998), that decision mandates a two-step process on remand. The majority opinion in this case appears to contemplate only an examination of the circumstances surrounding the alleged victim's statements without consideration of her ability to accurately receive, remember, and intelligently communicate impressions of fact.
 {¶ 26} In Burnette, a case nearly identical to this case, this Court distinguished its earlier decision in State v. Miller,43 Ohio App. 3d 44 (1988):
 In State v. Miller . . ., this court wrote that admissibility of a hearsay statement under Evid.R. 803(4) does not depend on a prior finding that the child is competent to testify pursuant to Evid.R. 601(A). This court did not hold, however, that there are no requirements for admissibility of such a statement. In this case, the trial court found Sigmund deficient in ways that would not only negate testimonial competence but would also destroy the reliability of statements made to a physician: namely, inability to receive just impressions of fact, inability to communicate impressions intelligibly, and inability to recollect past impressions or experiences. If that finding was correct, therefore, this court's holding in Miller would not render the statements admissible.
Burnette, 125 Ohio App. 3d at 290. Miller is now relied upon by the majority in this case.
 {¶ 27} The victim in Burnette was a thirty-year-old mentally retarded woman. Because her intellectual age was below ten years, the trial court held a *Page 17 
hearing to determine whether she was competent to testify at trial. It determined that she was not.
 {¶ 28} When later faced with the issue of whether a physician could testify regarding statements the victim had made to the physician, the trial court held that the physician could not so testify. The basis for the trial court's ruling was that it had determined that the victim was so "fundamentally incompetent" that her statements to her physician were inadmissible under Rule 803(4). This Court examined the trial court's questioning of the victim at the competency hearing and determined that that questioning did not adequately explore the issues presented by the question of whether the victim's hearsay statements to her physician should be received in evidence. It noted that it was not surprising that the questioning at the competency hearing was not adequate for that purpose, because the focus of questioning at a competency hearing is different from that necessary for consideration of the hearsay statements:
 It is not surprising that there was little investigation of her very short-term memory during the competency hearing, since that hearing involved mainly the question of whether she would, at trial, be able to accurately recall and relate what happened on the night of the alleged attack. Sigmund made the statements to the physician, however, only a few hours, at most, after the alleged attack. If she was unable to remember events that happened weeks or months previously but did possess the ability to accurately recall events for at least several hours, she could not properly have been found, on the basis of inability to recall, to be so "fundamentally incompetent" that those statements were inadmissible.
Burnette, 125 Ohio App. 3d at 291. *Page 18 
 {¶ 29} In remanding, this Court directed the trial court to first determine whether, at the time of the victim's statements to her physician, she had the ability to accurately receive, remember, and intelligently communicate impressions of fact. Although there is overlap between this inquiry and the type of inquiry necessary under Rule 601 of the Ohio Rules of Evidence, this inquiry focuses on the time of the statements rather than the time of trial. If she did have the necessary abilities, then, pursuant to State v. Dever, 64 Ohio St. 3d 401 (1992), it was necessary for the trial court to investigate the circumstances surrounding her statements to the physician:
 In conclusion, Sigmund's ability to accurately receive and intelligibly communicate impressions of fact, as well as her very short-term memory, must be more fully examined in order to determine whether she is, as the trial court found, so "fundamentally incompetent" that her statements to her physician were inadmissible under Evid.R. 803(4). If she is not found to be incompetent for that purpose, a Dever hearing or voir dire would then be in order to investigate the circumstances surrounding the making of those statements to determine their admissibility.
Burnette, 125 Ohio App. 3d at 293.
 {¶ 30} At the competency hearing in this case, the trial court questioned the victim in an effort to test her long-term memory. For example, it questioned her regarding her fifth birthday, which had occurred four months earlier. She was unable to recall details regarding that event. It also questioned about the abstract idea of where she lived. Although she gave the name of the housing development, she did not know the name of the street or the name of the town. There were two *Page 19 
questions that implicated her short term memory regarding more concrete matters. When asked with whom she lives, she said she lived with her father and sister, but neglected to mention her mother until prompted. She also was unable to say who had driven her to court.
 {¶ 31} In determining that she was incompetent to testify, the trial court focused on her ability to recall and her understanding of duty to tell the truth:
 And, so, from the Court's perspective, on a couple of different grounds, her ability to recall, her ability to understand her duty to speak the truth, I found that she did not satisfactorily respond to the questions for me to find that she's competent to either recall or to understand the obligation to speak the truth; and so I'm going to find her not competent with regard to this matter.
In excluding her hearsay statements, it focused on the same two things:
 I am making those specific findings, that she was not competent in April of 2004, and, most importantly, that that lack of competency is on both elements set forth in Evidence Rule 601 that she had the inability to perceive and then later relate events and circumstances, and, more importantly, that she did so and understood her obligation to do so truthfully.
 {¶ 32} In regard to her ability to perceive and later relate events and circumstances, the trial court's questioning was simply not extensive enough to allow it to reach that conclusion. On remand, it should question the witness more extensively about recent events in her life. If it concludes that she lacks the ability to perceive and relate recent events and circumstances, in the absence of evidence that her ability in that regard has deteriorated since the time of the hearsay statement, that statement should be excluded. If it concludes that she does *Page 20 
currently have that ability, it should receive evidence comparing her current ability to her ability at the time of the statement.
 {¶ 33} If the trial court concludes that, at the time of the statement, she had the ability to perceive and later relate events and circumstances, it should then conduct a hearing or voir dire regarding the specific circumstances surrounding that statement. If the trial court determines that the statement was not inappropriately influenced by others, the fact that it was for medical treatment allows for its admission without further consideration of her understanding of her duty to tell the truth. *Page 1